USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9/22/2021_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARC RESTELLINI,

                Plaintiff,

-against-

THE WILDENSTEIN PLATTNER INSTITUTE, INC. and FONDS WILDENSTEIN PLATTNER INSTITUTE FRANCE,

                Defendants.

THE WILDENSTEIN PLATTNER INSTITUTE, INC.,

                Counterclaimant,

-against-

MARC RESTELLINI and INSTITUT RESTELLINI SAS – DOCUMENTATION CENTRE,

                Defendants.

20 Civ. 4388 (AT)

**<u>ORDER</u>**

ANALISA TORRES, District Judge:

    Plaintiff, Marc Restellini, brings this action against Defendants, The Wildenstein Plattner Institute, Inc. ("WPI") and Fonds Wildenstein Plattner Institute France ("Fonds"), alleging copyright infringement and related claims in connection with WPI's digitization of certain material about the artist Amodeo Modigliani. Am. Compl., ECF No. 51. WPI filed counterclaims against Restellini and third-party counterclaimant, Institut Restellini SAS – Documentation Centre (the "Institut") (together with Restellini, the "Counterclaim Defendants"), alleging copyright infringement against the Counterclaim Defendants and false advertising under the Lanham Act, 15 U.S.C. § 43(a)(1), against the Institut. Am. Countercls., ECF No. 58.

Counterclaim Defendants now move to dismiss WPI's counterclaims.  ECF No. 66.  For the reasons stated below, Counterclaim Defendants' motion is GRANTED.[1]

## BACKGROUND[2]

In 1997, Restellini and the non-party Wildenstein Institute ("WI"), a non-profit organization based in France, began working together to create a catalogue raisonné[3] of works by Amodeo Modigliani.  Am. Countercls. ¶¶ 8, 11.  For the next eighteen years, Restellini and WI collaborated on the catalogue raisonné.  *Id.* ¶ 27.  WPI alleges that Restellini "offer[ed] his opinions as to whether or not artworks should be included in the planned catalogue raisonné" in "oral consultation" with WI employees, based on the information and materials "researched, collected, synthesized, analyzed and expressed by" the employees.  *Id.* ¶ 24.  For instance, WI employees "liaised with owners of artworks being submitted for consideration for inclusion in the planned catalogue raisonné, and, among other things, researched, compiled and reviewed provenance materials associated with such artworks," and "conducted substantive academic research on exhibitions and provenance of artworks attributed to Modigliani, including research, compilation and review of relevant information from museums and other third-party institutions."  *Id.* ¶¶ 17–18.  In 2013, Restellini began attempting to purchase from WI what WPI defines as the "Modigliani Material"[4], attempts which continued unsuccessfully for over two years.  *Id.* ¶ 25.  In fall 2015, Restellini and WI discontinued their collaboration on the catalogue raisonné before it was completed.  *Id.* ¶ 27.

---

[1] Because the Court can make this determination on the parties' briefing, it concludes that oral argument is not required.  *See* Individual Practices in Civil Cases ¶ III.J.
[2] The facts below are derived from the allegations in the parties' pleadings and documents incorporated in or integral to the pleadings.  *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422, 429 (2d Cir. 2011).
[3] A catalogue raisonné is a scholarly work identifying and describing all the known works by an artist.  Am. Countercls. ¶ 9, ECF No. 58; Am. Compl. ¶ 1, ECF No. 51.
[4] In this order, the Court uses WPI's definition of the "Modigliani Material," Am. Countercls. ¶ 23, although, as discussed *infra*, it is not clear what precisely that definition encompasses.

In 2017, through Fonds, a French non-profit organization established by WPI, WI granted WPI an automatically renewable, exclusive license to use and exploit the content of all of WI's materials, including the Modigliani Material. *Id.* ¶¶ 36–39. WPI planned to utilize that license to digitize the information to provide public online access to portions of the Modigliani Material at no cost, *id.* ¶ 42, but suspended that plan due to this litigation, *id.* ¶ 44.

Concurrently, since at least 2017, Restellini incorporated the Modigliani Material into correspondence and *avis d'inclusion*[5] with third parties and a forthcoming catalogue raisonné by Restellini, and disseminated the Modigliani Material to third parties. Am. Countercls. ¶ 50. The Institut allegedly charges 30,000 euros per "Modigliani-based inquiry." *Id.* ¶ 51. As part of this business, the Institut published on its English-language website the statement that:

> After 18 years of exemplary collaboration, Marc Restellini and the Wildenstein Institute decided, by a mutual decision, to part, Marc Restellini wishing to evolve on his own. In 2015, the Catalogue Raisonné Amedeo Modigliani is henceforth transferred to Institut Restellini, being taken up with new methods, even more modern and scientifically extensive. It will be enhanced by the drawings, which had been set aside with the Wildenstein Institute.

*Id.* ¶ 55.

On June 9, 2020, Restellini brought this action against WPI, alleging copyright infringement under United States and French law, violations of United States and French trade secret laws, and related state, federal, and French law claims, based on WPI's digitization of certain materials created in the development of the Modigliani catalogue raisonné. Compl., ECF No. 1; Am. Compl. On August 14, 2020, WPI answered the complaint and counterclaimed against the Counterclaim Defendants, alleging copyright infringement, failure to account for a copyrighted work, conversion, and violation of the Lanham Act § 43(a)(1). ECF No. 20. In its

---

[5] *Avis d'inclusion* are notices that a work would be included in the catalogue raisonné. Am. Compl. ¶ 70.

3

amended counterclaims, WPI alleges only copyright infringement and violation of § 43(a)(1) of the Lanham Act.  Am. Countercls.

## DISCUSSION

I. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff is not required to provide "detailed factual allegations," but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555.  Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*.  On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon in bringing suit.  *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422, 429 (2d Cir. 2011).  The standard for a motion to dismiss a complaint, counterclaim, and third-party complaint is the same—the allegations in the complaint, counterclaims, and third-party claims are taken as true, and all reasonable inferences are drawn in the non-movant's favor. *See Gilman v. Spitzer*, 902 F. Supp. 2d 389, 391 n.1 (S.D.N.Y. 2012).

II. Copyright Claim

Counterclaim Defendants first move to dismiss WPI's counterclaim for copyright infringement of its collective work.  Counterclaim Defendants argue that WPI has not pleaded this counterclaim with sufficient specificity to satisfy Federal Rule of Civil Procedure 8. Counterclaim Def. Mem. at 7–10, ECF No. 67.  The Court agrees.

To bring a copyright claim in this district, a plaintiff must show "(1) which specific original works are the subject of the copyright claim[;] (2) that plaintiff owns the copyrights in

4

those works[;] (3) that the copyrights have been registered in accordance with the statute[;] and (4) by what acts and during what time the defendant infringed the copyright." *Energy Intel. Grp., Inc. v. Jefferies, LLC*, 101 F. Supp. 3d 332, 338 (S.D.N.Y. 2015) (quoting *Jacobs v. Carnival Corp.*, No. 06 Civ. 606, 2009 WL 856637, at *4 (S.D.N.Y. Mar. 25, 2009)); *N. Am. Thought Combine, Inc. v. Kelly*, No. 01 Civ. 8112, 2003 WL 355237, at *2 (S.D.N.Y. Feb. 18, 2003) ("The requirement of a short and plain statement of the claim in Rule 8(a)(2) applies to copyright actions, and requires plaintiffs to identify . . . the collective works allegedly created and the works underlying them." (citations omitted)). Where the work originates in a country other than the United States that is a party to the Berne Convention—such as France—the registration requirement is waived. *Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 473 (E.D.N.Y. 2009); Am. Countercls. ¶¶ 52–53.

At the motion to dismiss stage, a plaintiff is not required to allege which elements of an identified work were infringed. *Krasselt v. Joseph E. Seagram & Sons, Inc.*, No. 01 Civ. 2821, 2002 WL 1997926, at *2 (S.D.N.Y. Aug. 29, 2002); *Kuklachev*, 6700 F. Supp. 2d at 473. Nor, if a plaintiff is alleging infringement of a subset of a group of works, must the plaintiff allege which specific one of those works was infringed. *Elliott v. Gouverneur Trib. Press, Inc.*, No. 13 Civ. 55, 2013 WL 6240489, at *2 (N.D.N.Y. Dec. 3, 2013). However, in such a case, the plaintiff needs to allege an "exhaustive" list of the potentially infringed copyrighted works to ensure the claims reach all those works; courts regularly dismiss claims regarding any works alleged to be infringed not included on such a list. *See Palmer/Kane LLC v. Benchmark Educ. Co. LLC*, No. 18 Civ. 9369, 2020 WL 85469, at *2 (S.D.N.Y. Jan. 6, 2020) (collecting cases).

Here, WPI alleges infringement of the "Modigliani Material." Am. Countercls. ¶ 31. It defines that material as "all of [WI's] research materials that its personnel assembled and analyzed in connection with the Modigliani Project," *id.* ¶ 23, and as "the information and

5

materials researched, collected, synthesized, analyzed and expressed by WI's employees," *id.* ¶ 24. It further states that two different WI employees "researched, compiled and reviewed provenance materials associated with" artwork submitted for consideration and "conducted substantive academic research on exhibitions and provenance of artworks attributed to Modigliani, including research, compilation and review of relevant information from museums and other third-party institutions." *Id.* ¶¶ 17–18. It also mentions that the Modigliani Material includes certain dossiers containing "information gathered in relation to individual works attributed to Modigliani," *id.* ¶ 43, and that WI purchased "publications and archival photographs from third parties to support the Modigliani Project," *id.* ¶ 21. In its brief, WPI argues that the subject work is the work product Restellini attempted to purchase from WI, but not the preexisting material that Restellini had created prior to his association with WI. WPI Mem. at 11, ECF No. 69.

None of these piecemeal allegations identify the work at issue with sufficient specificity. A collective work under French law is defined as "a work created at the initiative of a natural or legal person who edits it, publishes it and discloses it under his direction and name and in which the personal contributions of the various authors who participated in its production are merged in the overall work for which they were conceived, without it being possible to attribute to each author a separate right in the work as created." Code de la Propriété Intellectuelle [C. Pr. Int.] [Intellectual Property Code] art. L113-2, ECF No. 51-1. Although WPI alleges that the collective work at issue here is all the research materials assembled in connection with the Modigliani Project, its allegations consist of a collection of vague descriptors, which do not give Counterclaim Defendants—or the Court—notice of the specific individual works merged into the larger collective work.

6

WPI first contends that Counterclaim Defendants had fair notice of the materials at issue because they are "the same work product that Restellini unsuccessfully tried to *buy* from WI because he knew he did not already own it." WPI Mem. at 11 (emphasis in original); *see also* Am. Countercls. ¶¶ 25–26. However, this definition does not aid the Court in discerning what work is at issue in order to evaluate the copyright claims. *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16 Civ. 1318, 2017 WL 696126, at *14 (S.D.N.Y. Feb. 15, 2017) (requiring allegations sufficient that "the defendants [and] the Court can evaluate whether the remaining elements of the claim—including ownership of exclusive rights and infringement—have been met"), *report and recommendation adopted sub nom. Joint Stock Co. v. Infomir LLC*, No. 16 Civ. 1318, 2017 WL 2988249 (S.D.N.Y. Mar. 27, 2017). Moreover, without knowledge about the scope of the material Restellini attempted to purchase, the Court cannot evaluate whether this definition is reasonably narrow.

WPI next contends that its description of the work is sufficient because the notice requirement "is satisfied . . . when large collections of allegedly infringed works are identified by categories rather than individually." WPI Mem. at 12. However, even when large number of works are allegedly infringed and the works are identified by category, plaintiffs in this Circuit are required to give specific, concrete examples of the copyrighted works. *See, e.g.*, *Joint Stock Co. Channel One Russia Worldwide*, 2017 WL 696126, at *12 ("Where a copyright claim is based on the alleged wholesale infringement of a large number of copyrighted works, . . . the plaintiff must still identify, at a minimum, representative examples of the works allegedly infringed[.]"); *Zuma Press, Inc. v. Getty Images (US), Inc.*, No. 16 Civ. 6110, 2017 WL 2829517, at *2–3 (S.D.N.Y. June 29, 2017) (finding sufficient a list of 47,048 photographs allegedly infringed even though specific facts were alleged only as to 24, but not permitting claims regarding photographs not included in that list).

7

WPI's reliance on, *e.g.*, *GlobalOptions Servs., Inc. v. N. Am. Training Grp., Inc.*, 131 F. Supp. 3d 1291 (M.D. Fla. 2015), *Kuklachev*, 600 F. Supp. 2d 437, and *Krasselt*, 2002 WL 1997926, is misplaced, as the plaintiffs in those cases offered examples of the allegedly infringed works. *See GlobalOptions Servs., Inc.*, 131 F. Supp. 3d at 1298 (finding sufficient a definition of "copyrighted materials, proprietary fraud compliance training processes and courses to duplicate the copyrighted materials and proprietary processes owned by [defendant]" where the services were identified in a contract attached to the counterclaim, and examples were attached to the complaint); *Kuklachev*, No. 08 Civ. 2214 (E.D.N.Y. June 2, 2008), ECF No. 1 ¶¶ 74–78, 164–66 (alleging generally that "the key tricks, sketches, themes, stage setup and design, performer's cast, costumes and out appearance, and other major elements," were infringed, but giving specific examples elsewhere in the complaint), *deemed sufficient*, 600 F. Supp. 2d at 473–74; *Krasselt*, 2002 WL 1997926, at *1 (attaching copies of thirty copyrighted advertisements, though the plaintiff was not required to allege which specific subset of these was infringed); *but see Leaf, Inc. v. Burdeen*, No. 95 Civ. 5959, 1996 WL 89070, at *2–3 (N.D. Ill. Feb. 28, 1996) (noting, before *Twombly* and *Iqbal*, that "it certainly would have been better had [p]laintiffs plead their copyright infringement claim with greater specificity").

WPI offers no such examples here. Although it alleges that WI employees "researched, compiled and reviewed provenance materials" and conducted "research, compilation and review of relevant information from museums and other third-party institutions," Am. Countercls. ¶¶ 17–18, that the Modigliani Material includes dossiers of "information gathered in relation to individual works attributed to Modigliani," *id.* ¶ 43, and that WI purchased "publications and archival photographs," *id.* ¶ 21, it does not provide the Court with examples of this work product, nor does it specify in what form the ultimate work product appeared. Therefore, the Counterclaim Defendants and the Court cannot evaluate the other prongs of the copyright

8

infringement test. *See Joint Stock Co. Channel One Russia Worldwide*, 2017 WL 696126, at *14.

Finally, WPI argues that the Court should consider the procedural posture of its counterclaims. It contends that its primary argument is that none of the works over which Restellini asserts copyright are copyrightable. WPI Mem. at 13–14. Therefore, the subject matter of the counterclaims will be the amount of the Modigliani Material that Restellini demonstrates is copyrightable to the Court, but WPI cannot know what that material is until after the Court resolves the copyrightability question of Restellini's allegations. *Id.* However, without providing an "exhaustive" list specifying all the works possibly at issue, or, at least, giving concrete, representative examples of those works, the Court cannot determine whether WPI's claims could be meritorious should the Court decide any of those materials are copyrightable. *Palmer/Kane LLC*, 2020 WL 85469, at *2 (S.D.N.Y. Jan. 6, 2020); *Joint Stock Co. Channel One Russia Worldwide*, 2017 WL 696126, at *14. The Court is not, of course, requiring WPI to withdraw its argument that much of Restellini's claimed work is not copyrightable, but WPI has demonstrated its ability to plead in the alternative, *see, e.g.*, Am. Countercls. ¶¶ 29, 31, and could have done so here to give the Court examples of the Modigliani Material to allow it to determine the extent of overlap with Restellini's claimed materials and the alleged contours of the collective work.

Accordingly, Counterclaim Defendants' motion to dismiss WPI's copyright counterclaim is GRANTED.

III.   False Advertising Claim

Section 43(a)(1)(B) of the Lanham Act provides a cause of action against:

> [a]ny person who . . . uses in commerce . . . any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or

>   geographic origin of his or her or another person's goods, services, or commercial activities[.]

15 U.S.C. § 1125(a)(1)(B).  In this Circuit, such a claim requires that: "(1) the defendant has made a false or misleading statement; (2) the false or misleading statement has actually deceived or has the capacity to deceive a substantial portion of the intended audience; (3) the deception is material, in that it is likely to influence purchasing decisions; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." *Merck Eprova AG v. Gnosis S.p.A.*, 901 F. Supp. 2d 436, 450–51 (S.D.N.Y. 2012) (citing *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001)), *aff'd*, 760 F.3d 247 (2d Cir. 2014).

WPI alleges false advertising based on a statement on the Institut's website.  WPI specifically challenges the sentences in bold type below (the "Statement"), Am. Countercls. ¶ 55, but the entire page is included as context:

>   In 1997, invited by Daniel Wildenstein, Marc Restellini decided to undertake the Catalogue raisonné of Amedeo Modigliani's works, imposing new scientific criteria never before used in the field of research on works of art.  After 18 years of exemplary collaboration, Marc Restellini and the Wildenstein Institute decided, by a mutual decision, to part, Marc Restellini wishing to evolve on his own.  **In 2015, the Catalogue Raisonné Amedeo Modigliani is henceforth transferred to Institut Restellini**, **being taken up with new methods, even more modern and scientifically extensive.  It will be enhanced by the drawings, which had been set aside with the Wildenstein Institute.**
>
>   Marc Restellini will thus bring to an end over 20 years of research on this artist, about whom he has access to an outstanding group of archives, including those of Zborowski, Netter, Guillaume, Dutilleul and Wildenstein, as well as a unique deposit of more than 600 scientific analyses (on original works as well as forgeries).
>
>   Other catalogues will then be developed, in the fields of ancient, modern and contemporary art.

ECF No. 78 ¶ 3 (emphasis added).[6]

### A. Falsity

Two theories are available to a plaintiff seeking to establish that a statement is false. *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007). "First, the plaintiff can demonstrate that the challenged advertisement is literally false, *i.e.*, false on its face." *Id*. "[O]nly an *unambiguous* message can be literally false. Therefore, if the language or graphic is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false." *Id*. at 158 (emphasis in original) (quotation marks and citations omitted). Second, a plaintiff can demonstrate implied falsity: "that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." *Id*. at 153.

WPI first alleges that the Statement is literally false because WI "did not transfer the Modigliani Material, or the rights to use that material to create a catalogue raisonné (or for any other purpose), to Institut." Am. Countercls. ¶ 57. When determining whether a statement is literally false—that is, if it "conflicts with reality"—a court may "rely on its own common sense and logic in interpreting the message of the advertisement." *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 638 (S.D.N.Y. 2018) (quotation marks and citation omitted). In addition, according to the doctrine of "false by necessary implication," a court must "analyze the message conveyed in full context," and, if the message, considered in context, "necessarily impl[ies] a false message," it is literally false. *Time Warner Cable, Inc.*, 497 F.3d at 158. Therefore, for a statement to be literally false, either it or its only reasonable implication must conflict with reality.

---

[6] "For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'" *Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263, 296 n.27 (S.D.N.Y. 2016) (quoting *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n. 8 (S.D.N.Y. 2006)).

The Statement does not mention the Modigliani Material, nor does WPI assert that a catalogue raisonné existed and was not transferred, and, therefore, the Statement is not literally false. The Statement could, however, be read to imply that the materials necessary to create the catalogue raisonné were legally transferred to the Institut—a falsity, taking WPI's counterclaim allegations as true. Am. Countercls. ¶¶ 26–28, 59. But, this is not the only reasonable interpretation: the Statement could also reasonably be read to imply that *labor* on the catalogue raisonné, rather than the intellectual property, moved from WI to the Institut. As both interpretations are reasonable, the Statement is not literally false. *See Time Warner Cable, Inc.*, 497 F.3d at 158.

WPI also alleges that the Statement is impliedly false because it "suggests that the Modigliani Material was transferred by the WI to Institut to support Restellini's plan to create a Modigliani catalogue raisonné." Am. Countercls. ¶ 58. A plaintiff invoking the implied falsity theory normally "must demonstrate, by extrinsic evidence, that the challenged [advertisement] tend[s] to mislead or confuse consumers[.]" *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 112–13 (2d Cir. 2010) (quotation marks and citation omitted). At the motion to dismiss stage, "plaintiffs need only state that there was confusion and offer facts to support that claim." *Kuklachev*, 600 F. Supp. 2d at 470; *Lokai Holdings LLC*, 306 F. Supp. 3d at 639. Although WPI pleads that confusion exists, Am. Countercls. ¶ 61, it alleges no facts to support that conclusion, *see Express Gold Cash, Inc. v. Beyond 79, LLC*, No. 18 Civ. 837, 2019 WL 4394567, at *7 (W.D.N.Y. Sept. 13, 2019) (dismissing a false advertisement claim where "Plaintiff argues . . . that the . . . language is likely to mislead consumers for various reasons . . . , the [c]omplaint contains not a single fact to support such a conclusion.").

However, "where a plaintiff adequately demonstrates that a defendant has intentionally set out to deceive the public, and the defendant's deliberate conduct in this regard is of an

12

egregious nature, a presumption arises that consumers are, in fact, being deceived." *Johnson & Johnson * Merck Consumer Pharms. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 298–99 (2d Cir. 1992) (quotation marks and citation omitted). Courts have found evidence of such deceptive intent where there is a motive to deceive—such as knowing falsity and competition with the plaintiff—and egregious conduct—such as where the defendant was aware of the misleading effect and the deception was not common in the industry. *PharmacyChecker.com, LLC v. Nat'l Ass'n of Bds. of Pharmacy*, No. 19 Civ. 7577, 2021 WL 1199363, at *30 (S.D.N.Y. Mar. 30, 2021); *Merck Eprova AG*, 901 F. Supp. 2d at 455 (finding deceptive intent where defendant intentionally implied a false message and "did so for purely commercial motives and in flagrant disregard of prevailing scientific conventions").

Here, WPI alleges that the Institut (1) knew that the Modigliani Material was not transferred to the Institut, (2) made the statement to cause confusion, and (3) intended to influence "potential purchasers and sellers of Modigliani art, scholars and researchers of Modigliani, and the public in general to believe that the important information contained within the Modigliani Material is exclusively owned by, accessible through, and available from Institut," as opposed to it being publicly accessible through WPI. Am. Countercls. ¶¶ 58–60, 75. Although a close call, the Court concludes that these allegations are sufficient to plead that the Institut made the Statement knowing it would be impliedly false, and did so for commercial motives. Moreover, there is no indication that the Institut changed its website when the possibly misleading implications came to light. *Cf. Tiffany (NJ) Inc. v. eBay, Inc.*, No. 04 Civ. 4607, 2010 WL 3733894, at *4 (S.D.N.Y. Sept. 13, 2010). Therefore, the Court presumes that customers are being deceived. WPI has thus plausibly allege the Statement is false.

B.      Materiality

The Statement's falsity is not sufficient, however. That falsity must also be material: it must go to the nature, characteristics, or qualities of the product, and it must affect a consumer's buying decisions. 15 U.S.C. § 1125(a)(1)(B); *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997). Statements about whether a defendant has the right to use or distribute a work are not considered material in this district. *See Joint Stock Co. Channel One Russia Worldwide*, 2019 WL 804506, at *8 ("False statements that Russian TV was authorized to broadcast the [p]rogramming do not concern the nature, characteristics, qualities, or geographic origin of the [p]rogramming."); *Smith v. BarnesandNoble.com, LLC*, No. 12 Civ. 4374, 2014 WL 4828107, at *4 (S.D.N.Y. Sept. 23, 2014) (finding no materiality where "[p]laintiff simply accuses [d]efendant of the unauthorized use of his name and book, which allegedly 'divert[ed] traffic away from sites that [were] authorized to sell' his book"). Therefore, the Statement must do more than falsely represent that the Institut was authorized to use or distribute the Modigliani Material.

WPI puts forth a number of theories as to why the Statement is material. First, WPI argues that it misrepresents the Modigliani Materials as being the "product" of Restellini, when it is WI's work product, WPI Mem. at 26, thus essentially arguing that the Statement misrepresents the authorship of the Modigliani Material. In *Dastar Corp. v. Twentieth Century Fox Film Corp.*, the Supreme Court held that authorship is not a material fact under Lanham Act § 43(a)(1)(A), because it does not speak to the "origin" of the good. 539 U.S. 23, 32–33, 37 (2003). The Court reasoned that to hold otherwise would import copyright law into the trademark regime. *Id.* at 37. Therefore, although false statements about who produced the physical good in which an idea is embodied may be material under the Lanham Act, false statements about the authorship of the ideas are not. *Id.*; *Pearson Educ., Inc. v. Boundless*

14

*Learning, Inc.*, 919 F. Supp. 2d 434, 438 (S.D.N.Y. 2013) ("*Dastar* does not preclude a Lanham Act claim based on deceptive and confusing advertising of the tangible product in which the creative content is embodied."). Courts in this circuit are "in agreement" that this concept extends to claims brought under § 43(a)(1)(B), holding that "the words 'nature, characteristics, and qualities' in 43(a)(1)(B) cannot be read to refer to authorship." *See Lieb v. Korangy Publ'g, Inc.*, No. 15 Civ. 40, 2016 WL 8711195, at *11 (E.D.N.Y. Sept. 30, 2016) (quoting *Thomas Publ'g Co., LLC v. Tech. Evaluation Ctrs., Inc.*, No. 06 Civ. 14212, 2007 WL 2193964, at *3 (S.D.N.Y. July 27, 2007)); *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 308 (S.D.N.Y. 2011) ("The import of *Dastar* that an author's recourse for unauthorized use is in copyright cannot be avoided by shoe-horning a claim into section 43(a)(1)(B) rather than 43(a)(1)(A)."). Therefore, the implicit falsity the WPI "produc[ed]" the Modigliani Material is foreclosed by *Dastar*.

Second, WPI argues that the Statement misrepresents the Modigliani Materials as copyrightable. WPI Mem. at 26. However, again, this argument centers around the ownership and authorship of the ideas in the Modigliani Materials, not any statements about the physical product which contains those ideas. Therefore, it is foreclosed by *Dastar*, regardless of whether WPI argues for a lack of copyrightability. *See Dastar Corp.*, 539 U.S. at 36 ("[R]eading § 43(a) of the Lanham Act as creating a cause of action for, in effect, plagiarism—the use of otherwise unprotected works and inventions without attribution—would be hard to reconcile with our previous decisions.").

WPI's most persuasive argument is that the Statement misrepresents Restellini and the Institut as *exclusive* possessors of the Modigliani Material in order to force individuals to pay them for access, when in fact WPI has the right to make it known as well. WPI Mem. at 27–28. As discussed *supra*, unauthorized usage of creative works is not actionable under the Lanham

15

Act § 43(a). However, in cases decided before *Dastar*, a handful of courts held that representations that a defendant was the "exclusive" distributor of a good or piece of intellectual property relate to the quality, nature, or characteristics of that good. *See, e.g.*, *Icon Health & Fitness, Inc. v. Nautilus Grp., Inc.*, No. 02 Civ. 109, 2004 WL 6031124, at *17 (D. Utah Dec. 21, 2004); *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 678–79 (N.D. Ill. 1998). Those cases were either decided before *Dastar* or discussed the physical distribution of a product. Here, WPI's allegations go to contested ownership of the information contained in the Modigliani Material, rather than the Modigliani Material as a physical product. *See, e.g.*, Am. Countercls. ¶¶ 60–61, 75. Similarly, WPI argues that the Statement "necessarily misleads consumers into thinking they must pay Institut large sums for exclusive access to purportedly proprietary scholarship . . . when, in fact, that scholarship is not Restellini's and it should be free[.]" WPI Mem. at 27. Although consumers may care about who may provide access to that information, it is a distinction sounding in copyright: whether the information is in the public domain, is WPI's, or is exclusively Restellini's. And under *Dastar*, such a statement is not actionable under the Lanham Act.

WPI's cited cases are not to the contrary. The only binding case cited, *Societe Des Hotels Meridien v. LaSalle Hotel Operating Partnership*, *L.P.*, concerns false suggestions that the services provided at one hotel location were provided by plaintiff rather than defendant. 380 F.3d 126, 132 (2d Cir. 2004); *see also Gensler v. Strabala*, 764 F.3d 735, 736 (7th Cir. 2014) (holding that a Lanham Act claim applied where advertising falsely designated the services of an architect as emanating from the individual rather than his firm). However, the Statement's alleged falsity derives from the transfer of the Modigliani Material, rather than any services Restellini provided. And to the extent it derives from contesting who performed the work in

16

creating the Modigliani Material, that is, in essence, a debate over authorship—and thus foreclosed by *Dastar*.

WPI also cites cases that note that "taking credit for the [plaintiff's] history and achievements" is actionable under the Lanham Act. *See Nat'l Grange of the Ord. of Patrons of Husbandry v. Cal. State Grange*, No. 16 Civ. 201, 2016 WL 6696061, at *5 (E.D. Cal. Nov. 15, 2016). However, the alleged falsity is not Restellini taking credit for WI's work on the Modigliani Material; the Statement acknowledges collaboration, as does WPI.

Therefore, the Statement, though false, is not material under the Lanham Act, and, therefore, the Court does not examine the other § 43(a)(1)(B) factors. Accordingly, the Institut's motion to dismiss WPI's false advertising claim is GRANTED.

## CONCLUSION

For the reasons stated above, Counterclaim Defendants' motion to dismiss is GRANTED. The Clerk of Court is directed to terminate the motion at ECF No. 66.

SO ORDERED.

Dated: September 22, 2021
      New York, New York

_____
ANALISA TORRES
United States District Judge